*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* DEVONE, Minors.

UNPUBLISHED
October 10, 2024
2:41 PM

No. 370946
Kalamazoo Circuit Court
Juvenile Division
LC No. 2022-000284-NA

Before: SWARTZLE, P.J., and REDFORD and FEENEY, JJ.

PER CURIAM.

Respondent-father appeals as of right the trial court's order terminating his parental rights to the minor children, JD1 and JD2, pursuant to MCL 712A.19b(3)(c)(*i*) (the conditions that led to the adjudication continue to exist with no reasonable likelihood for rectification in a reasonable time), MCL 712A.19b(3)(g) (the parent, despite financial ability, has failed to provide proper care or custody), and MCL 712A.19b(3)(j) (reasonable likelihood of harm to the child if returned to the parent). We affirm.

## I. FACTS

The minor children and their older brother—who was also the subject of the trial court proceedings, but not this appeal—had been residing with their mother in New Jersey until she died by suicide. The children were then moved to Kalamazoo to live with respondent-father. It is unclear from the record what kind of relationship had existed between respondent-father and the mother before her suicide, but it appears that the children had no significant relationship with respondent-father before moving to Michigan. Respondent-father struggled with alcoholism, which he attributed to being a coping mechanism for his grief over the mother's suicide, but it appeared that his alcoholism predated her death.

The children were removed from respondent-father a month and a half after he assaulted JD1 by punching her in the face and slamming her to the ground by her throat, and petitioner alleged that respondent-father previously assaulted JD2. Respondent-father was criminally charged, pleaded guilty, and was sentenced to probation for assaulting JD1, and he completed anger-management and substance-abuse coursework, as well as drug testing, through probation. There was no indication that respondent-father had issues with alcohol consumption while on

-1-

probation, but he did test positive for THC[1] nearly every time. He was, however, mostly noncompliant with drug and alcohol testing through the Department of Health and Human Services (DHHS) in this matter.

Respondent-father had poor attendance at parenting times throughout these proceedings; in light of the children's ages (between 10 and 13) and the physical abuse allegations that brought them to the court's attention, the children were allowed to choose whether they wished to participate in parenting times or have a relationship with respondent-father, and more often than not they declined to participate, with JD1 consistently refusing.[2] After providing services and counseling to the family with no improvement in the dynamics between respondent-father and the children, the trial court terminated respondent-father's parental rights, and he now appeals.[3]

## II. ADVISING RESPONDENT-FATHER OF APPELLATE RIGHTS PURSUANT TO MCR 3.965(B)(15)

Respondent-father first argues that the referee failed to advise him of his appellate rights pursuant to MCR 3.965(B)(15) at the preliminary hearing, and petitioner concedes that the referee failed to comply with MCR 3.965(B)(15).[4] MCR 3.965(B)(15) states "[i]f the court orders removal of the child from a parent's care and custody, the court shall advise the parent, guardian, or legal custodian of the right to appeal that action." The trial court did, however, advise respondent-father of his appellate rights and ability to challenge the assumption of jurisdiction or "any errors in the

---

[1] "Tetrahydrocannabinol, or THC, is the physiologically active component of marijuana. See *Stedman's Medical Dictionary* (26th ed), p 1791." *People v Koon*, 494 Mich 1, 3 n 3; 832 NW2d 724 (2013).

[2] Respondent-father also had a no-contact order in place as a condition of his probation that he not have any contact with JD1, thus making any parenting time with her an impossibility.

[3] Respondent-father does not raise any challenges to the statutory bases for terminating his parental rights, nor does he challenge the trial court's evaluation of whether terminating respondent-father's parental rights was in the children's best interests. Nonetheless, we have reviewed the record and find no errors warranting reversal.

[4] "[T]his Court is, of course, not bound to accept such a concession." *People v Novak*, 489 Mich 941, 942; 798 NW2d 17 (2011) (quotation marks and citation omitted). However, as explained, the record supports this conclusion.

adjudicatory process" under MCR 3.971(B)(6)-(8) at the adjudication hearing.[5] Despite the referee failing to satisfy MCR 3.965(B)(15), respondent-father cannot satisfy the plain-error standard.[6]

Respondent-father did not raise this matter in the trial court; therefore, it is not preserved. Unpreserved claims and "adjudication errors raised after the trial court has terminated parental rights are reviewed for plain error." *In re Ferranti*, 504 Mich 1, 29; 934 NW2d 610 (2019). See also *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, ___ Mich App ___, ___; ___ NW3d ____ (2023) (Docket No. 359090); slip op at 5 fn 3; *In re Beers*, 325 Mich App 653, 677; 926 NW2d 832 (2018). Respondent-father must establish that "(1) error occurred; (2) the error was 'plain,' i.e., clear or obvious; and (3) the plain error affected [his] substantial rights." *In re Ferranti*, 504 Mich at 29. "An error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *In re Beers*, 325 Mich App at 677 (quotation marks and citation omitted; alteration incorporated). "It is the [respondent] rather than the Government who bears the burden of persuasion with respect to prejudice." *In re Pederson*, 331 Mich App 445, 463; 951 NW2d 704 (2020) (quotation marks and citation omitted). Although there was plain error in this matter, respondent-father does not argue, let alone establish, how the outcome of these proceedings would have been different had the trial court complied with MCR 3.965(B)(15). Accordingly, we find no plain error affecting substantial rights. Cf. *In re Beers*, 325 Mich App at 677-678.

### III. COMPLIANCE WITH MCR 3.972(A)

Respondent-father next argues that the trial court violated the 63-day requirement in MCR 3.972(A) by allowing a six-month gap between the preliminary hearing and the plea taken at the adjudication that occurred during the rescheduled pretrial/review hearing. This argument is contradicted by the record, however. At the September 12, 2022 preliminary hearing, the referee explicitly asked if the parties, for scheduling purposes, would waive the 63-day requirement; all the parties responded in the affirmative. The referee then scheduled an October 13, 2022 pretrial,

---

[5] See *In re Ferranti*, 504 Mich 1, 35-36; 934 NW2d 610 (2019). "On the date that *In re Ferranti* was released, our Supreme Court amended MCR 3.971 to require trial courts to inform a respondent that appellate review is available to challenge the 'court's initial order of disposition' and that the respondent 'may be barred from challenging the assumption of jurisdiction in an appeal from the order terminating parental rights if [the respondent] do[es] not timely file an appeal of the initial dispositional order ....' MCR 3.971(B)(6) and (8), as amended June 12, 2019, 504 Mich. xcvi, xcvii. Additionally, in the event that a respondent is not informed that he or she is entitled to challenge a trial court's assumption of jurisdiction on appeal from the initial dispositional order, 'the respondent may challenge the assumption of jurisdiction in an appeal from the order terminating [the] respondent's parental rights.' MCR 3.971(C), as amended June 12, 2019, 504 Mich xcvi, xcviii." *In re Pederson*, 331 Mich App 445, 465, fn 3; 951 NW2d 704 (2020).

[6] Notably, however, the referee did state that "if anyone objects to anything I've done under [MCR] 3.991, they certainly have that right" to seek judicial review of the referee's recommendations. MCR 3.911(A), (B).

December 7, 2022 trial and March 13, 2023 review hearing. Pursuant to the October 14, 2022 Order for Adjournment, the dates were adjourned because respondent-father had his criminal jury trial scheduled October 25, 2022. All parties signed the Amended Stipulation and Order adjourning the December 1, 2022 pretrial and trial because respondent-father's jury trial was moved to January 12, 2023. Respondent-father failed to appear for the rescheduled January 19, 2023 pretrial, so the court scheduled a combined pretrial conference and 182-day review hearing on March 13, 2023, pursuant to the January 24, 2023 Order for Adjournment. On March 13, respondent-father appeared and entered his plea admitting to allegations A, B, C and H in the child protective petition. At each step of the process, respondent-father, through counsel, agreed to the adjournments. Therefore, respondent-father waived the matter, which is an intentional relinquishment of a known right that eliminates any error and forecloses appellate review. See *In re MJC*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 365616); slip op at 3.

## IV. REASONABLE EFFORTS

Respondent-father next argues that the Van Buren DHHS[7] failed to provide him and the minor children with reasonable efforts throughout this matter, providing assorted examples. The issues respondent-father now raises essentially amount to: the difficulties in travel arrangements early in this matter with services initially being provided in Van Buren County; caseworkers not providing adequate information about the children's academic, mental, and emotional well-being to respondent-father; DHHS failing to secure family-counseling sessions earlier in this matter; and not adequately taking into account the children's refusal to participate in parenting times when evaluating respondent-father's participation rate. We disagree.

Challenges to the adequacy of services provided, or whether reasonable efforts at reunification were made, require the respondent to raise the issue in the trial court, otherwise the matter is not preserved and is subject to the plain-error standard of review. See, e.g., *In re Frey*, 297 Mich App 242, 247; 824 NW2d 569 (2012), and *In re VanDalen*, 293 Mich App 120, 135; 809 NW2d 412 (2011). Respondent-father did not challenge these matters in the trial court; therefore, they are not preserved and are subject to the plain-error standard.

"Generally, the [DHHS] has an affirmative duty to make reasonable efforts to reunify a family before seeking termination of parental rights." *In re Sanborn*, 337 Mich App 252, 258; 976 NW2d 44 (2021). "In general, when a child is removed from the parents' custody, the petitioner is required to make reasonable efforts to rectify the conditions that caused the child's removal by adopting a service plan," and "the Department must create a service plan outlining the steps that both it and the parent will take to rectify the issues that led to court involvement and to achieve reunification." *Id*. at 258-259. Although "the [DHHS] has a responsibility to expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of respondents to participate in the services that are offered." *In re Frey*, 297 Mich App at 248. When "services were proffered, but respondents failed to either participate or demonstrate that they sufficiently benefited from the services provided," it cannot be successfully argued that DHHS failed to provide reasonable efforts. *Id*. When "respondents were offered various services

---

[7] Despite this matter being within the jurisdiction of Kalamazoo County, the Van Buren DHHS was tasked with this case because of foster-care caseworker shortages.

and did participate in and complete certain mandated requirements of their respective treatment plans, [but] they failed to demonstrate sufficient compliance with or benefit from those services specifically targeted to address the primary basis for the adjudication" of the petition, it also cannot be successfully argued that reasonable efforts were not provided. *Id*.

At the March 13, 2023 adjudication, the trial court made clear to the case manager from Van Buren County that respondent-father would receive services, parenting classes, drug screens and parenting time in Kalamazoo, even though the worker was based in Van Buren County.[8] The case managers made referrals and re-referrals for supportive visitation parenting education program and established parenting time in Kalamazoo. Despite the no-contact order with one of the children due to the assault he perpetrated on JD1 in the presence of JD2, respondent-father was instructed to write letters to the children but failed to do more than one letter. The record is replete with various services that were provided to the children in this matter, especially mental health counseling and treatment as well as trauma assessments, which respondent-father does not dispute. The record is equally filled with examples of respondent-father's noncompliance with his alcohol and drugs screenings, as well as various parenting classes and substance abuse counseling that he was ordered to complete. While he complied with the requirements and services that his probation agent recommended, his compliance with DHHS was "very minimal." Although it is unfortunate that family counseling did not begin earlier in this matter due in part to the trauma he inflicted on the children, respondent-father did not demonstrate sufficient compliance with, or benefit from, the services that were offered to address the primary bases for the petition being filed: respondent-father's alcoholism, emotional instability and poor parenting skills,[9] which culminated in his assault of JD1. As a result, even if DHHS's services had been more thorough or started sooner, respondent-father cannot establish that the outcome of this matter would have been different, and therefore, he cannot satisfy the plain-error standard. While DHHS established reasonable efforts for reunification at the outset of the case, respondent-father never fully availed himself of the serves nor benefitted from them.

Affirmed.

/s/ Brock A. Swartzle
/s/ James Robert Redford
/s/ Kathleen A. Feeney

---

[8] The original case manager testified that "Van Buren County has taken cases from Kalamazoo and Berrien County due to the shortage of foster care workers in both counties."

[9] Even when he was given an opportunity to visit with JD2, respondent-father only attended 46% of the visits. And despite supervised visitation orders, he texted the children and insinuated that their mother's death was their fault.